UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------X
Nadia Marsh, M.D.,                    Index No.
                                      08 Civ. 5405 (RJS)(THK)
            Plaintiff,
      -v-                             COMPLAINT

Cabrini Medical Center,
                                      JURY TRIAL DEMANDED
            Defendant.
--------------------------X


      Plaintiff, by and through her attorney David B. Rankin

complaining of the defendant(s), respectfully alleges that:


**Parties, Venue, Jurisdiction, and Jury Demand**

1) Plaintiff, Nadia Marsh, M.D. ("Marsh, M.D.") is an

   individual domiciled at 7711 Garland Avenue, Takoma Park,

   MD 20912.

2) Defendant, Cabrini Medical Center ("Cabrini"), is a

   Domestic Not-for-Profit Corporation that has the

   principle business address of 227 East 19th Street, New

   York, NY 10003.

3) The amount in controversy exceeds the sum of $75,000.00,

   exclusive of interest, costs, and attorney's fees.

4) This Court had jurisdiction pursuant to 28 U.S.C.A. §

   1332.

5) Venue is appropriate in this District pursuant to 28
   U.S.C.A. § 1391 because defendant resides in this
   District.

6) Plaintiff demands a jury trial.


## Facts

7) The parties entered into an employment contract on
   December 2, 2005 wherein Plaintiff, Marsh, M.D. agreed to
   provide her medical services to Defendant, Cabrini,
   herein after, ("The Contract").  Attached as Exhibit 1.

8) Plaintiff, Nadia Marsh, M.D. executed the contract on
   December 5, 2005.

9) The contract at ¶ 1 provides yearly compensation be
   provided to Plaintiff from Defendant in the amount of one
   hundred and eighty thousand dollars ($180,000.00).

10)  The contract states at paragraph 8, entitled
   "Termination" that:

   This Agreement may be terminated by either
   party without cause upon one hundred and
   eighty (180) days' prior written notice to
   the other.  Should the Medical Center give
   you such notice, you will be paid by the
   Medical Center for two hundred and seventy
   (270) days immediately following the notice
   but you shall only be required to perform
   your duties for the ninety (90) days
   immediately following the notice.  Should
   you commence employment at another facility
   prior to the end of the two hundred seventy
   (270) day period, your severance pay shall

decrease in an amount equal to your salary
income during this period.  In addition,
this Agreement may be terminated by the
Medical Center at any time in the event your
Medical Staff privileges at the Medical
Center are terminated or materially reduced
in any way, your license to practice
medicine is revoked, suspended or limited in
any material way, or you fail to qualify for
medical malpractice insurance, or you engage
in conduct which, in the fair and reasonable
opinion of the Board of Trustees, is
prejudicial to the best interests and
welfare of the Medical Center.

11)  On or about November 1, 2007, Defendant notified

Plaintiff, Nadia Marsh, M.D. via first class mail that

her services would no longer be needed at Cabrini as the

hospital was conducting permanent layoffs.  This letter

is attached as Exhibit 2.

12)  The notice letter referenced in ¶ 9 and attached as

exhibit B of this complaint serves as the requisite

notice pursuant to ¶ 8 of the Contract thereby activating

the termination terms of the contract as contained in

that paragraph.

13)  Marsh, M.D.'s last day of employment was February 1,

2008.

14)  The Contract at ¶ 8 provides that, "[s]hould the

Medical Center give you such notice, you will be paid by

the Medical Center for two hundred and seventy (270) days

immediately following the notice but you shall only be

required to perform your duties for the ninety (90) days immediately following the notice."

15)  Ninety one (91) days elapsed between the when Nadia Marsh, M.D. was given her notice and when her employment ceased.

16)  The Medical Center owes Nadia Marsh, M.D. for two hundred and seventy (270) days immediately following the notice provided.  Nadia Marsh, M.D. was paid for ninety one (91) of these days.  Defendant owes Marsh M.D. one hundred and seventy nine (179) days of severance pay. Therefore, eighty eight thousand, two hundred and seventy three dollars and ninety seven cents ($88,273.97) is due to Plaintiff in unpaid severance.

17)  On or about January 31, 2008, Cabrini Medical Center provided Nadia Marsh, M.D. a severance agreement.  This agreement is attached as Exhibit 3.

18)  Nadia Marsh, M.D. executed this agreement on February 1, 2008.

19)  The central term of this severance agreement was that Nadia Marsh, M.D. was to be paid the sum of forty two thousand six hundred and sixty seven dollars and twenty cents ($42,667.20) over the course of three months in exchange she was to waive her legal remedies.

20)  To date, no payment has been received.

21)  Due to defendant's abrogation of their
     responsibilities to pay the required consideration to
     Plaintiff, this severance agreement is a legal nullity
     entitling Nadia Marsh, M.D. to the terms of her original
     contract.

22)  During the last week of January 2008, Plaintiff Marsh,
     M.D. inquired of the payroll officer at Cabrini Medical
     Center, Jamie Gomez the amount of vacation pay she had
     due.

23)  Based on that conversation it was confirmed that,
     Marsh, M.D. is owed (2) weeks and two (2) days of
     vacation time she had accrued through the duration of her
     employment.  These amounts total eight thousand five
     hundred and thirty three dollars and forty four cents
     ($8,533.44).  This sum has not been received.

24)  Nadia Marsh, M.D. has fully performed all of her
     contractual responsibilities.

25)  Marsh, M.D. has not received other employment.

26)  These debts have been acknowledged and payment has
     been promised numerous times.

27)  On April 15, 2008 a demand letter was sent to the
     defendant(s).  The letter was received on April 21, 2008.
     The letter and proof of service are attached as Exhibit
     4.

28)  No payment has been received for this debt.

29)  No prior relief for this debt has been requested in
this or any other court.

### FIRST CAUSE OF ACTION:
### Breach of Contract

30)  Plaintiff repeats, reiterates, and realleges each and
every allegation contained in paragraphs numbered "1"
through "29" with the same force and effect as if fully
set forth herein.

31)  As a result of the breach of contract, defendant(s)
owes to plaintiff the full amount of eighty eight
thousand, two hundred and seventy three dollars and
ninety seven cents ($88,273.97) in severance pay and
eight thousand five hundred and thirty three dollars and
forty four cents ($8,533.44) in unpaid vacation, totaling
ninety six thousand eight hundred and seven dollars and
forty one cents ($96,807.41).

32)  Additionally, defendant(s) owe interest from the date
of filing this lawsuit.

### SECOND CAUSE OF ACTION:
### QUANTUM MERRIUT / UNJUST ENRICHMENT

33)  Plaintiff repeats, reiterates, and realleges each and
every allegation contained in paragraphs numbered "1"

through "32" with the same force and effect as if fully
set forth herein.

34)  Defendant benefited from the services provided by
Plaintiff.

35)  The Defendant understood as part of Plaintiff's
compensation, she is entitled to all of the benefits
under the aforementioned contract.

36)  As a result of the defendants conduct, defendant(s)
owes to plaintiff the full amount of eighty eight
thousand, two hundred and seventy three dollars and
ninety seven cents ($88,273.97) in severance pay and
eight thousand five hundred and thirty three dollars and
forty four cents ($8,533.44) in unpaid vacation, totaling
ninety six thousand eight hundred and seven dollars and
forty one cents ($96,807.41).

**WHEREFORE,** plaintiff demands judgment against
defendant(s) in the amount of in the amount of eighty eight
thousand, two hundred and seventy three dollars and ninety
seven cents ($88,273.97) and eight thousand five hundred
and thirty three dollars and forty four cents ($8,533.44)
in unpaid vacation, totaling ninety six thousand eight
hundred and seven dollars and forty one cents ($96,807.41)

with interest from the date of filing, and attorney's fees
together with costs and disbursements.

Dated: New York, NY
        June 13, 2008

                        Respectfully Submitted,


                By:_____
                    DAVID B. RANKIN (DR - 0863)
                    Attorney for Plaintiff
                    350 Broadway, Suite 700
                    New York, NY 10013
                    t: 212-226-4507

# EXHIBIT 1

C A B R I N I  Medical Center

Healing New York one neighbor at a time™

227 East 19th Street • New York, NY 10003 • (212) 995-6000

www.cabrininy.org

December 2, 2005

Nadia Marsh, M.D.
355 Eight Avenue, Apt. 9D
New York, New York 10001

Dear Dr. Marsh:

I am pleased to offer you a position as Chief of Geriatric Medicine, in the Department of Medicine (the "Department") at Cabrini Medical Center. It is agreed that you will commence your employment in this capacity on or about December 1, 2005.

The following provisions form the basis of our offer to you:

1.    **Salary.**  The position is offered at the annual base salary rate of $180,000, payable in accordance with the Medical Center's customary payroll.

2.    **Duties.**  Your responsibilities shall include the performance of those duties which are customarily incumbent upon and performed by a Chief of a Division within the Department at a teaching hospital, and as an Attending Physician within the Department and as prescribed from time to time by the Board of Trustees or pursuant to its authority. Other duties may be assigned to you by the Director of the Department. You may work from your home one day per week. You shall carry out your duties in compliance with the Medical Center's Staff Bylaws, a copy of which has been provided to you. Your duties shall include the responsibility for such functions as are necessary to insure compliance with the standards of the Council on Medical Education of the American Medical Association, the requirements of the Joint Commission on Accreditation of Health Care Organizations, the American Hospital Association, and the Public Health Law and the Rules and Regulations of the Department of Health. You will carry out your duties hereunder in a manner consistent with the canons, traditions and Ethical Directives of the Catholic Church and the mission and values of Cabrini Medical Center. You shall abide by all rules, regulations and policies of the Medical Center including its Corporate Compliance Plan. Base salary, as used in

A Facility of the Missionary Sisters of the Sacred Heart
A Member of the Mount Sinai Health System • An Affiliate of Mount Sinai School of Medicine
An Associate Member of the Catholic Health Care Network

Nadia Marsh, M.D.
December 2, 2005
Page 2

paragraph 1, is inclusive of the duties described in this paragraph 2 and is, without limitation, in consideration for your acceptance and performance as Geriatrics Division Chief and is not dependant on your clinical productivity.

3.    **Private Practice**.  As an attending physician in a teaching hospital, you shall be permitted and expected to conduct a private practice as long as it does not interfere with your duties hereunder.  You shall not engage in the practice of medicine except as permitted under this Agreement.  All income generated by your private practice activities shall be assigned to the Medical Center to be allocated between you and the Medical Center as set forth herein.  You will be paid Fifty Percent (50%) of the private practice funds generated by you during the term of this Agreement.  In accordance with this faculty practice plan, we will conduct quarterly and annual accountings and make appropriate distributions and adjustments based upon the actual faculty practice income generated by you. Distributions shall be net of patient refunds and contractual allowances which will be indicated as a line item in the remittance to you.  The cost of billing will be deducted from income generated by your private practice prior to any distributions of income.  The maximum private practice income you may receive in each year is $180,000.  At such time as this Agreement is terminated or expires you will continue to be paid for any post-termination or post-expiration collections attributable to your private practice activities rendered during the term of this Agreement consistent with the terms of this paragraph 3.  This faculty practice plan arrangement is based upon costs incurred by the Medical Center in supporting your private practice including space, personnel and insurance.

A reconciliation of gross collections net of patient refunds and contractual allowances shall be carried out within thirty (30) days after the end of each month, and your apportioned share shall be paid to you as additional compensation within (60) days after the end of the month.  Notwithstanding the foregoing to the contrary, you will have the option of billing for patients seen together by you and your nurse practitioner under your supervision in the inpatient and outpatient setting.

4.    **Honoraria**.  You may not participate in lectures and/or consultations with pharmaceutical companies or accept honoraria therefrom, or testify as an expert in medical malpractice cases to the extent those activities require your attention during regular business hours without the prior written permission of the Director of the Department.  If any of those activities require your attention during regular business hours, you shall utilize your vacation time for those activities.  Title to and royalties or other income from any invention, chemical compound, process or any discovery, improvement or anything developed by you or with your assistance while you are employed at the Medical Center which relates to the medical field, whether patentable or not, shall be the property of the Medical Center to be used by it for the purpose of furthering the medical sciences.  The

Nadia Marsh, M.D.
December 2, 2005
Page 3

Medical Center has no objection should you elect to apply for a Geriatrics
Achievement Career Award ("GACA"). Should you receive the GACA and the
grant relating thereto, the Medical Center acknowledges that the grant is
structured such that part of the monies from the award is intended to allow you
more dedicated time for activities that promote geriatric education. That part of
the grant dedicated to the foregoing purpose will be retained by the Medical
Center. We acknowledge that the remainder of the GACA grant will be paid to
you directly for the express purpose of allowing you to engage in activities and/or
projects that enhance your education in geriatrics teaching. You agree that the
time you dedicate to such activities will not compromise the performance of your
duties as described herein.

5.    **Benefits**. Your benefits package is outlined in the benefits summary which will
be provided to you by the Human Resources Department. No assurance is given
that the present benefits will be maintained. The Medical Center reserves the
right to reduce, eliminate or otherwise amend any benefit.

In addition, you will be provided with ten (10) paid days per year in which to
attend two main academic continuing medical education conferences within the
continental United States and you will receive reimbursement of your reasonable
travel and hotel expenses for those conferences. The Medical Center agrees that
reduction, elimination or revocation of this conference entitlement shall be a
material breach of this Agreement by the Medical Center.

6.    **Term**. The effective date of this Agreement shall be on or about December 1,
2005. This Agreement shall continue in effect until December 31, 2006, unless
otherwise terminated as hereinafter provided. This Agreement shall be
automatically renewed for additional one (1) year periods unless either party
terminates the Agreement in accordance with paragraph 8 hereof upon the same
terms and conditions as provided herein.

7.    **Malpractice**. You will be covered by the Medical Center's malpractice
insurance coverage for your assigned duties as a full-time attending in the
Department. You will provide the Medical Center with notice of each and every
claim or potential claim of professional liability against you of which you receive
notice, directly or indirectly.

8.    **Termination**. This Agreement may be terminated by either party without cause
upon one hundred eighty (180) days' prior written notice to the other. Should the
Medical Center give you such notice, you will be paid by the Medical Center for
two hundred seventy (270) days immediately following the notice but you shall
only be required to perform your duties for the ninety (90) days immediately
following the notice. Should you commence employment at another facility prior
to the end of the two hundred seventy (270) day period, your severance pay shall

{00289958.DOC:2}

Nadia Marsh, M.D.
December 2, 2005
Page 4

decrease in an amount equal to your salary income during this period. In addition, this Agreement may be terminated by the Medical Center at any time in the event your Medical Staff privileges at the Medical Center are terminated or materially reduced in any way, your license to practice medicine is revoked, suspended or limited in any material way, or you fail to qualify for medical malpractice insurance, or you engage in conduct which, in the fair and reasonable opinion of the Board of Trustees, is prejudicial to the best interests and welfare of the Medical Center.

9.    **Medical Staff Appointment.** Your employment hereunder is separate from your Medical Staff appointment. As a condition of your employment hereunder, you agree at all times to maintain membership on the Medical Staff of the Medical Center and to comply with the Bylaws, Rules and Regulations of the Medical Center and the Medical Staff. Your employment is separate from your current or intended Medical Staff appointment and privileges, and, therefore, termination of this Agreement is not subject to the hearing requirements of the Bylaws and Rules and Regulations of the Medical Staff.

Your current or intended Medical Staff appointment and privileges at the Medical Center are contingent upon your continued employment, and, accordingly, upon termination of your employment, you shall immediately resign your Medical Staff membership and privileges at the Medical Center. Said resignation shall take place despite any provision in the Bylaws, Rules and Regulations of the Medical Center or its Medical Staff to the contrary, and, therefore the hearing procedure set forth in the Bylaws will not be applicable.

10.    **Office.** You will be provided with a private office and personal computer to assist you in carrying out your duties hereunder.

11.    **Miscellaneous.** This Agreement represents the final and binding agreement of the parties hereto and supersedes all prior agreements or understandings relating to the subject matter hereto. This Agreement shall be governed by the laws of the State of New York without regard to its conflict of laws doctrine.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

{00289958.DOC:2}

Nadia Marsh, M.D.
December 2, 2005
Page 5

    If the foregoing terms and conditions are acceptable to you, please countersign the
enclosed copy of the letter and return it to me. I am looking forward to working with you and I
am confident that you will find the experience at Cabrini Medical Center to be rewarding.

                                            Sincerely,

                                            Robert S. Chaloner
                                            President/CEO

AGREED TO AND ACCEPTED:

Nadia Marsh, M.D.

Date: 12-5-05
Enclosure

{00289958.DOC:2}

# EXHIBIT 2



CABRINI MEDICAL CENTER

227 East 19th Street • New York, NY 10003 • 212 995-6000 • www.cabrininy.org

November 1, 2007

## FIRST CLASS MAIL

**Nadia Marsh**
**355 8th Ave Apt. 9D**
**New York, NY 10001**

Dear Nadia:

This is to inform you that Cabrini Medical Center will conduct layoffs at its facility located at 227 East 19th Street, New York, New York 10003. The layoffs are expected to commence during the 14-day period between December 31, 2007 and January 14, 2008. As a result, your employment is reasonably likely to be terminated during the 14-day period between December 31, 2007 and January 14, 2008. This action is expected to be permanent.

We will provide you with additional information as it becomes available.

Very truly yours,

*Ronald Gade M.D.*

Ronald Gade, M.D.
President and Chief Executive Officer



A Facility of the Missionary Sisters of the Sacred Heart
A Member of the Mount Sinai Health System • An Affiliate of Mount Sinai School of Medicine
An Associate Member of the Catholic Health Care Network

# EXHIBIT 3

## [CABRINI MEDICAL CENTER LETTERHEAD]

January 31, 2008

Re:    Severance Agreement

Dear Dr. Marsh:

This letter contains the terms and conditions of your termination from employment with Cabrini Medical Center ("Cabrini"). Your signature on this letter and the attached release means that you accept and agree to these terms:

1.    Your employment with Cabrini is terminated effective on February 4, 2008 (the "Termination Date"). All wages earned up to and including that date will be paid to you in accordance with Cabrini's next regularly scheduled pay cycle. Other than your right under COBRA to continue health insurance coverage for a period of time (through payment of the applicable monthly premiums), [and your right to vested pension benefits, if any,] your employee benefits will end as of April 30, 2008.

2.    You will also, contingent on your executing the attached general release and not revoking it during the seven (7) day period after you executed it and on the terms contained in Paragraph 3 below, receive the severance pay set forth in this section, commencing on the eight (8th) day after we receive the executed release from you. Cabrini will pay you severance pay in the amount of $42,667.20 (12) weeks salary, which will be paid to you over a 3 month period, which commences on February 5, 2008 after we receive the executed release from you, on Cabrini's normal payroll dates during such period. You acknowledge that this severance pay represents amounts above and beyond any amounts to which you may be entitled based on your employment with Cabrini. Please note that as the severance payments represent continuing wages, Cabrini will withhold from such payments all taxes and other withholdings that Cabrini normally withholds from its employees.

3.    In consideration of your receiving this severance pay, you agree to execute the attached general release and return the executed release to us

4.    The terms of this Agreement are and will remain confidential, and neither you nor anyone acting at your direction, may disclose the terms of this Agreement to any person or entity, unless required by law or for accounting purposes. Any violation of this provision of the Agreement shall entitle Cabrini to recover from you the entire amount of the Separation Pay made under this Agreement.

5.    The parties desire to end their relationship in a professional manner. To this end, the parties agree to not disparage one another orally or in writing. Any violation of this

820043v.1

provision of the Agreement shall entitle Cabrini to recover from you the entire amount of the Separation Pay made under this Agreement.

6.      You agree that you have been given an opportunity to read this letter agreement and the attached release; to consult with an attorney prior to signing, if you desire; that you fully understand all its terms, and that your signature on this letter and the attached release is made knowingly and voluntarily.

Notwithstanding anything herein to the contrary, this offer shall be available for the period of one (1) week from the date hereof. If you have not provided us with the executed release and complied with your other obligations hereunder by such date, this offer shall automatically be deemed withdrawn.

If you agree to these terms, please sign this letter and the attached General Release. Again, we appreciate your prior service and wish you well in your future endeavors.

Very truly yours,

Cabrini Medical Center

By:
Name:
Title:

AGREED TO AND ACCEPTED:

Name: Nadia Marsh

Dated: 2/1          , 2008

## GENERAL RELEASE AND COVENANT NOT TO SUE

### A.   GENERAL RELEASE

For good and valuable consideration, Dr. Naica Marsh for herself/himself, her/his heirs, administrators, representatives, executors, successors and assigns (collectively "Releasor"), does hereby irrevocably and unconditionally release, acquit and forever discharge Carbini Medical Center , and its officers, directors, owners, partners, supervisors, employees, affiliates, agents, and attorneys, including without limitation and all persons acting by, through, under or in concert with any of them  (collectively, "Releasees"), and each of them, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, remedies, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs) (collectively "claims") of any nature whatsoever, known or unknown, whether in law or equity, including claims arising under the United States and/or New York State Constitutions, the common law, and/or claims arising out of alleged violations of any federal, state, local or other governmental statutes, regulations or ordinances, which Releasor may have against each or any of the Releasees, from the beginning of the world until the date of the execution of this General Release and Covenant Not To Sue.

The claims forever discharged and released by this General Release and Covenant Not To Sue include but are not limited to those arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.; the Older Workers Benefit Protection Act, 29 U.S.C. § 626; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended, the Family and Medical Leave Act, the

820043v.1

Reconstruction Era Civil Rights Act, as amended, 42 U.S.C. § 1981 et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq., the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq., the New York State Labor Law, including § 740 thereof, and any and all state or local laws regarding employment discrimination and/or federal, state or local laws of any type or description regarding employment, including but not limited to any claims arising from or derivative of Releasor's employment with Releasee, and his/her separation from such employment, any claims for sexual harassment, race, religion, sex, national origin, handicap, or claims of wrongful or abusive discharge, negligence, intentional defamation, infliction of emotional distress or breach of implied or express contract; and any claim for attorneys' fees, costs, disbursements and/or the like.

## B.   COVENANT NOT TO SUE

Releasor hereby covenants and agrees not to sue, make or bring complaints, file any grievances or arbitration or commence any other proceeding, administrative or judicial, against the Releasees in any court of law or equity, or before or with any administrative agency or tribunal (public or private), with respect to any matter whatsoever arising on or before the date hereof, including but not limited to matters arising from or derivative of Releasor's duties, supervision of residents, employment and/or medical staff affiliation with the Releasees or his/her separation from that employment.

## C.   RELEASE AND WAIVER OF AGE DISCRIMINATION CLAIMS

I, the undersigned, understand that I am giving up and forever waiving any and all rights and claims against Releasees under the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.) and the Older Workers Benefit Protection Act (29 U.S.C. § 626).

820043v.1

I agree that the consideration I am receiving in exchange for this waiver and release is in addition to anything of value to which I am already entitled.

I acknowledge that I have been advised in writing to consult with an attorney prior to signing this document.

I acknowledge that I have been given at least twenty-one (21) days within which to consider this agreement. If I sign this agreement before the expiration of twenty-one (21) days, I do so voluntarily and of my own choosing.

I understand that I may revoke this agreement within seven (7) days after I sign it, and that this agreement does not become effective or enforceable until the seven (7) day revocation period has expired.

NOTICE TO RELEASOR: CONSULT WITH AN<br>ATTORNEY BEFORE SIGNING THIS DOCUMENT

IN WITNESS THEREOF, the undersigned has hereunto set his/her hand and seal on the _1_ day of _February_ 2008.

_Nadia Merel_

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF _New York_ )

On this _1st_ day of _February_, 2008, before me personally came to me _Nadia Merel_, personally known and known to me to be the same person described in and who executed the foregoing GENERAL RELEASE AND COVENANT NOT TO SUE, and he/she acknowledged to me that he/she executed the same.

MONICA I MCFARLANE
NO.01MC6058416
MY COMMISSION EXPIRES 05/07/2011
NOTARY PUBLIC OF NEW YORK
COUNTY OF QUEENS

Notary Public

§20043v.1

# EXHIBIT 4

# David B. Rankin

### Attorney at Law

350 Broadway, Suite 700
New York, NY 10013

David@DBRankinLaw.com
Phone: 212-226-4507
Fax: 212-658-9480

**VIA CERTIFIED and REGULAR MAIL**
**Parcel No.: 7007 3020 0002 9591 8988**

April 15, 2008

Cabrini Medical Center
Legal Department
227 East 19th Street
New York, NY 10003

**RE:   Nadia Marsh, M.D.**
      **Demand for Payment**

Dear Legal Department:

Please find enclosed the employment agreement between Cabrini Medical Center and
Nadia Marsh, M.D.. Please remit the payment necessary in ¶ 8 of this agreement. The
amount due is two hundred and seventy (270) days severance pay. This amount is one
hundred and thirty three thousand one hundred and fifty dollars and seventy cents
($133,150.70). If we do not receive confirmation that payment is forthcoming within the
next two (2) weeks, we will commence litigation.

Thank you for your considerations.

Very best regards,

David B. Rankin

DBR/mmt
Enclosure
cc:    Client

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cabrini Medical Center
227 East 19th Street
New York NY 10003

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____    ☐ Agent
                            ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7007 3020 0002 9591 8988

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540